UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BENEDICT R. GENCO.                          17-CV-01168-LJV-MJR

                    Plaintiff,              REPORT AND
                                            RECOMMENDATION
        v.

STARPOINT CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION,

                    Defendant.
_____

## INTRODUCTION

        This case has been referred to the undersigned pursuant to Section 636(b)(1) of

Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing and

reporting on dispositive motions for consideration by the District Court.  Before the Court

are: (1) defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure (Dkt. No. 9); and (2) defendant's motion for a filing

injunction prohibiting plaintiff from commencing any new or further actions in this Court

against Starpoint Central School District as well as its agents, representatives or

employees (Dkt. No. 18).  For the following reasons, it is recommended that defendant's

motions be denied.

## RELEVANT FACTS AND BACKGROUND

### Plaintiff's Submissions

        In evaluating a motion to dismiss a complaint, a court may consider: "(1) the facts

alleged on the face of the complaint; (2) documents attached to the complaint as exhibits;

(3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice." *Acquest Holdings, Inc., v. Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 683 (WDNY 2016); *accord Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  In addition, the Court may consider factual allegations in a *pro se* litigant's motion papers or the documents attached to those papers.  *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (SDNY 2015) (in deciding a motion to dismiss a *pro se* complaint, "it is appropriate to consider materials outside the complaint to extent that they are consistent with the allegations in the complaint", including documents attached to opposition papers, information contained in affidavits and allegations contained in plaintiff's memorandum of law).

Benedict Genco ("plaintiff"), who is proceeding *pro se*, filed a complaint against Starpoint Central School District Board of Education ("Starpoint" or "defendant") on November 15, 2017 alleging disability discrimination and retaliation in the course of his employment.  (Dkt. No. 1).  Plaintiff submitted the form "Complaint for Employment Discrimination" provided by the Court to *pro se* litigants and a type-written attachment detailing his claims.  (*Id.*).  He separately filed two additional documents entitled "Exhibits to the Complaint" which include letters and other correspondence related to events described in the complaint.  (Dkt. Nos. 8 and 10).  In response to defendant's motion to dismiss, plaintiff filed a 25-page written response and 330 pages of other documents and exhibits in support of his claims.  (Dkt. No. 13).  In evaluating the motion to dismiss, the Court has considered plaintiff's complaint and separately filed exhibits to the complaint. Also, to the extent that the information is relevant and consistent with the allegations in the complaint, the Court has also considered plaintiff's response in opposition to the

motion to dismiss and the documents attached as exhibits thereto.  The Court notes that plaintiff's lengthy submissions are, in significant part, difficult to follow and to fully understand.  However, in light of plaintiff's *pro se* status, the Court has attempted to discern the causes of action asserted.[1]

### Plaintiff's Allegations

Plaintiff began employment with Starpoint in or around October of 2000 as a substitute cleaner.  (Dkt. No. 10, pg. 11; Dkt. No. 13, pg. 10).  He was appointed to the position of part-time laborer in February 2001 and to the position of full-time cleaner in August of 2002.  (Dkt. No. 13, pg. 10).  In 2003, plaintiff was appointed to work as a full-time custodian.  (*Id.* at pg. 221).  Plaintiff claims that Starpoint failed to accommodate his disability, subjected him to unequal terms and conditions of employment, and retaliated against him.  (Dkt. No. 1, pg. 4).  His alleged disabilities are cerebral palsy, a learning disability and mitochondrial disease.  (*Id.*).  Plaintiff claims that Starpoint retaliated against him because he complained to the New York State Department of Labor for safety violations and because he filed a previous federal employment discrimination lawsuit against Starpoint in March of 2013.[2]  (Dkt. No. 1, pg. 10).

Plaintiff alleges that on or around January 11, 2017, he requested an accommodation because of his learning disability and cerebral palsy.  (Dkt. No. 1, pg. 10; Dkt. No. 13, pgs. 17-19).  His allegations suggest that the accommodation request was

---

[1] The Court notes that after oral argument on defendant's motion to dismiss, plaintiff submitted a twenty-six page document entitled "Notice of Possible Termination of Employment" and a twenty-seven page document entitled "Exhibit".  (Dkt. Nos. 24 and 25).  The Court has reviewed these submissions but does not rely on them, nor do their contents change the Court's recommendations herein.

[2] Plaintiff filed the March of 2013 lawsuit in this District against Starpoint and alleged disability discrimination, failure to accommodate, retaliation, hostile work environment and due process violations. (Dkt No. 1:13-CV-301)  The Honorable William M. Skretny granted summary judgment in favor of Starpoint in February of 2015.  *See Genco v. Starpoint Central School District*, 13-CV-301, 2015 WL 540217 (WDNY Feb. 10, 2015).

related to a change in his duties with respect to the school building's boilers and his inability to understand training given as to the boilers. (Dkt. No. 1, pg. 10). Plaintiff also states that there was a new requirement that he be able to take apart doors containing small parts and screws, but that he was given confusing diagrams. (Dkt. No. 13, pg. 17-18). Plaintiff alleges that he was told he would be provided with a diagram of the internal parts, that he reminded defendant of his learning disability, and that he was unable to understand verbal instructions because of his learning disability. (*Id.* at pg. 18). Plaintiff alleges that Starpoint knew of his cerebral palsy and learning disability for a number of years.[3] (*Id.* at 19). Later in his response, plaintiff generally alleges that he was offered no accommodation suggestions or meetings on the subject of an accommodation. (*Id.* at pg. 21). When asked, during oral argument, about his alleged request for an accommodation on January 11, 2017 as to boiler training, plaintiff indicated that he was taken to five different boiler rooms, given verbal instructions that he did not understand, and that he expressed a need for some type of assistance or accommodation.

Plaintiff alleges that on January 12, 2017, the day after he requested the accommodation, he was charged with a "no call/no show" absence. (Dkt. No. 1, pg. 10). Plaintiff alleges that on January 13, 2017, his mother contacted Starpoint to express concerns about his ability to work. (Dkt. No. 1, pg. 10; Dkt. No. 13, pg. 19). Documents submitted with the complaint and response indicate that plaintiff's mother expressed concerns to Starpoint about plaintiff's mental health. (Dkt. No. 13, pg. 59, 65). Plaintiff

---

[3] Plaintiff's papers indicate that he was previously granted a reasonable accommodation by Starpoint in 2012 with respect to his cerebral palsy. (Dkt. No. 1, pg. 10; Dkt. No. 13, pgs. 17-18). Documents submitted by plaintiff and representations by defense counsel at oral argument indicate that this accommodation was related to the distance plaintiff was required to walk between school buildings in the course of carrying out his job duties. (Dkt. No. 13, pgs. 220-223). It does not appear that plaintiff's alleged accommodation request in January of 2017 was related to the previous accommodation granted in 2012.

indicates that Starpoint has not permitted him to return to work since January 13, 2017. (*Id.*).  On January 20, 2017, plaintiff submitted a doctor's note indicating that he could return to work on January 23, 2017 without restrictions.  (Dkt. No. 1, pgs. 10-11; Dkt. No. 10, pg. 6).  On January 23, 2017, Starpoint placed plaintiff on paid administrative leave pursuant to Section 72 of the New York State Civil Service Law ("Section 72"), pending the results of a medical examination.  (Dkt. No. 10, pg. 5; Dkt. No. 1, pg. 11).  Starpoint later notified plaintiff that he was required to attend a medical examination pursuant to Section 913 of the New York State Education Law, to be conducted by Dr. Michael P. Santa Maria.  (Dkt. No. 10, pg. 4).  Plaintiff alleges that he produced a second return-to-work note from Erie County Medical Center on February 10, 2017, but that it was not accepted by Starpoint.  (Dkt. No. 1, pg. 11).  Plaintiff underwent the required examination on March 15, 2017.  (Dkt. No. 13, pgs. 57-67).  At the conclusion of the exam, Dr. Santa Maria found that plaintiff was not fit for duty.  (*Id.*).  Specifically, Dr. Santa Maria found that plaintiff had "evidenced paranoid ideation", was observed to act in a verbally aggressive manner during the evaluation, had difficulties with appropriate social interactions with people in general and should not be around children.  (*Id.* at pg. 67). Effective May 31, 2017, Starpoint placed plaintiff on unpaid administrative leave pursuant to Section 72.  (Dkt. No. 13, pgs. 104, 301).  Plaintiff was informed that he would remain an employee of Starpoint during the leave and that he would be permitted to draw on his accumulated unused leave time.  (*Id.* at 301).  Plaintiff's shares of his health insurance premiums were also to be deducted from his accumulated leave time.  (*Id.*).  Starpoint further informed plaintiff that if he was not reinstated within one year after the date his

leave commenced, he could be terminated pursuant to Section 73 of the New York State Civil Service Law.  (*Id.* at 69-70).

Plaintiff alleges that the placement on leave and the requirement that he undergo a medical exam constituted retaliation and discrimination based upon his disabilities. (Dkt. No. 1, pgs. 10-11; Dkt. No. 13, pgs. 11, 19).  He alleges that Starpoint made no attempt to accommodate him and "simply made up a mental health allegation…to retaliate, intimidate, [and] discriminate" against him and that "[t]he district apparently feels that [plaintiff] should not be entitled to an accommodation under the disability act."  (Dkt. No. 13, pgs. 19, 21).  Plaintiff further claims that the medical exam was improper because Starpoint is not "an education corporation" and because the exam was performed by a neuropsychologist rather than a physician.  (Dkt. No. 13, pgs. 11-12; Dkt. No. 1, pg. 12). Plaintiff alleges that after May 30, 2017: (1) he was no longer paid wages or given overtime opportunities; (2) his health insurance, dental insurance and retirement contributions were discontinued; and (3) he no longer accrued paid time off.  (Dkt. No. 1, pg. 12; Dkt. No. 13, pg. 22).  Plaintiff indicates that he served a notice of claim on Starpoint on February 14, 2017 and that he received a notice from Starpoint's legal counsel scheduling his deposition for April 19, 2017.  (Dkt. No. 1; pg. 11).

On April 24, 2017, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and disability discrimination.  (Dkt. No. 10, pg. 11).  The charge stated that plaintiff is a qualified individual with a disability and that he sought a reasonable accommodation from Starpoint in January of 2017 when he received "acute inpatient care".  (*Id.*).  Plaintiff alleged that in February 2017, he presented a doctor's note indicating he was able to return to work without restrictions, but that

Starpoint refused to allow him to return until he underwent a medical examination by a physician of their choice.  (*Id.*).  On August 23, 2017, the EEOC issued a finding that it was unable to conclude that a violation occurred and notified plaintiff of his right to bring a federal court action within ninety days.  (Dkt. No. 1, pg. 7).  Plaintiff commenced this action on November 15, 2017.  (Dkt. No. 1).

### Defendant's Opposition and Injunction Request

Defendant argues that plaintiff's complaint must be dismissed because he failed to exhaust his administrative remedies and because he fails to state a claim upon which relief may be granted.  (Dkt. Nos. 9, 17).  On March 7, 2018, defendant filed a motion for a permanent injunction preventing plaintiff from filing any new or future actions in this Court against Starpoint, including its agents, representative and employees.  (Dkt. No. 18).  Plaintiff filed a response to defendant's motion for a filing injunction on March 27, 2018.  (Dkt. No. 19).  On April 16, 2018, this Court heard oral argument as to defendant's motion to dismiss and motion for a filing injunction.[4]

---

[4] Plaintiff has also filed suit in this District, on a *pro se* basis, against Webster Szanyi, LLP and Sargent & Collins, LLP, two law firms that represented Starpoint over the course of plaintiff's employment and in defense of this lawsuit.  *See Genco v. Webster Szanyi, LLP,* Case No. 1:18-CV-00093 and *Genco v. Sargent & Collins, LLP,* Case No. 1:18-CV-00107.  Both Webster Szanyi and Sargent & Collins filed motions to dismiss plaintiff's respective complaints for failure to state a claim.  On April 16, 2018, this Court also heard oral argument as to those defendants' motions to dismiss.  Today, this Court issued Reports recommending that plaintiff's complaints against Webster Szanyi and Sargent & Collins be dismissed with prejudice.  (Case No. 1:18-CV-00093, Dkt. No. 18  and Case No. 1:18-CV-00107, Dkt. No. 15).  Webster Szanyi also moved for a permanent filing injunction against plaintiff, which this Court recommended be denied.  (Case No. 1:18-CV-000932, Dkt. No. 18).

## DISCUSSION

### *Motion to Dismiss*

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).  In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense...[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Bell Atl. Corp.*, 550 U.S. at 679.

Additionally, the court must be mindful when an individual is proceeding *pro se*. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007);

8

see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.").   However, even a pro se complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'."  Ashcroft, 556 U.S. at 678; quoting Bell Atl. Corp., 550 U.S. at 570.

### Exhaustion of Administrative Remedies

Prior to bringing a federal cause of action under the Americans with Disabilities Act ("ADA"), a plaintiff must file an administrative charge with either the EEOC or a comparable state or local agency and receive a right-to-sue letter.  Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157, 172 (EDNY 2006); 42 U.S.C. §12117(a) (adopting for claims brought under Title I of the ADA the exhaustion requirement set forth for Title VII claims).  A federal action under the ADA must be brought within ninety days of receipt of a right-to-sue letter.  Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 713-14 (2d Cir. 2001).  A district court may only hear those claims that were either included in the charge or are based on conduct reasonably related to that alleged in the charge.  McNealy v. New York Pub. Library, 96 Civ. 3023, 1997 U.S. Dist. LEXIS 15014 (SDNY Oct. 1, 1997) *4-6; accord Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401-03 (2d Cir. 1993).  In Butts, the Second Circuit explained that the "reasonably related" exception exists in three basic forms: (1) loose pleading; (2) retaliation for filing an EEOC charge; and (3) similar subsequent incidents of discrimination.  Id. at 1401-02.  "Loose pleading" permits claims not raised in the charge if the conduct at issue would fall

within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge that was made. *Id.* at 1402.

Starpoint's motion to dismiss indicates that plaintiff has filed twenty-seven complaints against Starpoint with the New York State Division of Human Rights ("DHR") since June of 2017. (Dkt. No. 9-1, ¶4; Exhs. A-V). The complaints predominately allege discrimination or retaliation in the course of plaintiff's employment with Starpoint, and many raise the same or similar factual allegations as this lawsuit. (*Id.*). Starpoint argues that plaintiff has not exhausted his administrative remedies because, at the time he filed this lawsuit, he had outstanding or pending administrative complaints against Starpoint involving the same or similar conduct.[5]

Notwithstanding the myriad of other administrative complaints plaintiff has filed against Starpoint, plaintiff has exhausted his administrative remedies with respect to this lawsuit. On April 24, 2017, plaintiff filed a charge with the DHR alleging retaliation and disability discrimination against Starpoint. (Dkt. No. 10, pg. 11). The charge was dual filed with the EEOC. (*Id.*). Therein, plaintiff alleged that he requested a reasonable accommodation in January of 2017. (*Id.*). He further alleged that he was removed from his position in February of 2017 despite the fact that his physician indicated he could return to work, and that Starpoint required he undergo a physical and mental examination by a physician of their choice. (*Id.*). On August 23, 2017, plaintiff received a right to sue letter from the EEOC as to his April 24, 2017 charge. (Dkt. No. 1, pg. 7). He timely

---

[5] In the motion to dismiss filed on December 20, 2017, defendant noted that of the twenty-seven complaints plaintiff filed against Starpoint since June of 2017, ten had been dismissed by the DHR and seventeen remained pending before that agency. (Dkt. No. 9-1; ¶¶5-10). At the time defendant filed its reply in support of the motion to dismiss on February 19, 2018, all but one of plaintiff's administrative complaints had been dismissed. (Dkt. No. 17, ¶5). During oral argument, defense counsel indicated that all of plaintiff's administrative complaints against Starpoint have been dismissed.

commenced this action within ninety days of receiving the letter.  Moreover, plaintiff's instant complaint contains predominantly the same allegations as his April 24, 2017 administrative charge.  Specifically, plaintiff alleges here that beginning in January of 2017, he requested and was denied a reasonable accommodation, unlawfully placed on leave, not permitted to return to work, and forced to undergo a medical exam.  The fact that plaintiff filed other administrative charges alleging the same or similar conduct is not relevant.  Indeed, plaintiff received a right to sue letter from the EEOC with respect to his April 24, 2017 charge, he commenced this action within ninety days of receiving the letter, and the allegations before this Court are reasonably related to those set forth in plaintiff's April 24, 2017 charge.  For these reasons, plaintiff's complaint should not be dismissed for failure to exhaust administrative remedies.

*Retaliation*

In order to set forth a retaliation claim under the ADA, a plaintiff must allege that: (1) he engaged in an activity protected by the ADA; (2) his employer was aware of the protected activity; (3) an adverse action was taken against him; and (4) there was a causal connection between the alleged adverse action and the protected activity.  *Moran v. Wegmans Food Markets, Inc.*, 65 F. Supp. 3d 327, 332 (WDNY 2014); *accord Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  Plaintiff initially alleges that Starpoint retaliated against him because he complained to the Department of Labor of safety violations in August of 2016.  This claim of retaliation fails on its face because a safety complaint is not an activity protected by the ADA.  *See* 42 U.S.C. §12203 ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified,

11

assisted or participated in any manner in an investigation, proceeding, or hearing under [the Americans with Disabilities Act.]"); *Kealy v. Consol. Edison Co.,* 98 Civ. 2210, 2002 U.S. Dist. LEXIS 12780, *17-18 (SDNY July 16, 2002) (complaints about safety and other work issues did not constitute protected activity for purposes of establishing an ADA retaliation claim).

In contrast, plaintiff's March 2013 federal employment discrimination lawsuit constitutes protected activity under the ADA. *See Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896, 907 (EDNY 1999) (the protected activity element of a retaliation claim is satisfied by, *inter alia*, the filing of a formal complaint with an agency or the filing of a lawsuit); *Gaines v. N.Y.C. Transit Auth.*, 528 F. Supp. 2d 135, 149 (EDNY 2007) ("Plaintiff engaged in protected activity under the ADA when he filed . . . [a] lawsuit against the [defendant].").  In addition, plaintiff's allegation that he requested an accommodation on January 11, 2017 constitutes protected activity under the ADA. *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148-49 (2d Cir. 2002). *See also Goonan v. FRB of N.Y.*, 916 F. Supp. 2d 470 (SDNY 2013) ("It is well established that requesting an accommodation [is] behavior protected from an employer's retaliation.".)  Starpoint argues that plaintiff did not request an accommodation in January of 2017.  However, as noted above, plaintiff's complaint and supporting documents allege that a request was made.  Indeed, these contrasting statements represent issues of fact that cannot be resolved on a motion to dismiss.  Further, a "plaintiff receives protection even if he was not entitled to the reasonable accommodation, as long as he made his request in good faith." *Ugactz v. UPS, Inc.*, 10-CV-1247; 2013 U.S. Dist. LEXIS 43481 (EDNY March 26, 2013).  Thus, plaintiff's 2013 federal lawsuit and his request for a reasonable accommodation in

January 2017 constitute protected activity for purposes of his ADA retaliation claim. Further, it is clear from the complaint and other materials that plaintiff has sufficiently alleged that defendant was aware of these activities.

Having found that plaintiff engaged in protected activity, the Court now turns to whether plaintiff suffered an adverse employment action. The "standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). To that end, a plaintiff claiming retaliation for engaging in protected activity under the ADA "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Plaintiff alleges that Starpoint retaliated against him by refusing to allow him to return to work after January 13, 2017, requiring him to undergo a medical exam pursuant to Section 72, and placing him on Section 72 administrative leave effective January 23, 2017. Section 72 provides that "[w]hen in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability … the appointing authority may require such employee to undergo a medical examination to be conducted by a medical officer selected by the civil service department." *See* N.Y. Civ. Serv. L. §72. If it is determined that the employee is not physically or mentally fit to perform their duties, the employee may be placed on an unpaid leave of absence for a period of one year. *Id.* at §1. Over the course of the year, the employee "shall be entitled to draw on all accumulated, unused sick leave, vacation, overtime and other time allowances standing to [his] credit. *Id.* at §1. If the employee is shown to be medically fit for the position within

one year after commencement of the leave, he is entitled to reinstatement. *Id.* at §2. If an employee on Section 72 leave is not reinstated within one year after commencement of the leave, his employment may be terminated. *Id.* at §4.

Prior decisions by the Second Circuit and other district courts in this Circuit suggest that an employer's requirement that an employee undergo a Section 72 medical evaluation may be an adverse employment action if the requirement impacts the employee's terms and conditions of employment. In *Baum v. County of Rockland*, the Southern District of New York Court found that an employer's requirement that a plaintiff submit to a Section 72 medical examination was not an adverse employment action because the plaintiff did not suffer any negative ramifications as a result of the examination. 337 F. Supp. 2d 454, 474 (SDNY 2004). However, the Southern District Court went on to note that "[h]ad [plaintiff] been required to undergo several exams, lost time, pay or benefits the result might be different." *Id.* The Second Circuit later affirmed the Southern District Court's finding of no adverse employment actions and likewise noted that it "need not consider whether there might be other circumstances in other cases in which a [medical] exam could constitute an adverse employment action for purposes of …ADA retaliation." 161 Fed. App'x 62, n. 2 (2d Cir. 2005). In *Manners v. New York State Dep't of Envtl. Conservation*, the Northern District of New York Court found that where an employee was required to undergo a Section 72 medical examination prior to returning to work and, in conjunction with the exam, was forced to utilize a month of sick leave and benefits, the employee suffered an adverse employment action sufficient to survive a motion to dismiss. 6-14-CV-810, 2015 U.S. Dist. LEXIS 90828, *29-30 (NDNY July 14, 2015). The Northern District Court noted that "consistent with *Baum*, the [Section] 72

examination, combined with Plaintiff's substantial loss of sick time, state a claim that is more than a mere inconvenience." *Id.  See also O'Toole v. Ulster County*, 1:12-CV-1228, 2014 U.S. Dist. LEXIS 138045, *27-29 (NDNY Sept. 30, 2014) ("[T]he combination of the [Section] 72 exam *and* the involuntary, unpaid leave constitute a 'materially adverse change' to Plaintiff's terms and conditions of her employment.").  Here, plaintiff was notified on January 23, 2017 that he was being placed on Section 72 leave and that he was required to undergo a medical exam to assess his fitness for duty.  Effective in or around May 31, 2017, plaintiff was placed on unpaid leave pursuant to Section 72 and required to use his accumulated leave time.  Plaintiff alleges that after May 30, 2017, he did not receive wages, benefits or retirement contributions, nor did he accrue any paid time off.  The Court finds that plaintiff's allegations that he was not only subjected to a medical exam, but also that he was placed on unpaid administrative leave, required to utilize his accumulated paid time off, and denied benefits and retirement contributions, are sufficient to allege an adverse employment action for purposes of surviving a motion to dismiss the retaliation claim.  Indeed, that Court finds that removal from his position, the medical exam, placement on unpaid leave, and loss of paid time off and other benefits would dissuade a reasonable employee from making or supporting a charge of discrimination.[6]

Lastly, a plaintiff claiming retaliation must allege a causal connection between the protected activity and the adverse employment action.  For purposes of an ADA retaliation

---

[6] Plaintiff also seems to allege adverse action as a result of: (1) the "no call/no-show" designation he received on January 12, 2017; (2) the notice of deposition sent to him by Starpoint's legal counsel; (3) the fact that the Section 72 examination was conducted by a neuropsychologist rather than a physician; and (4) that one of Starpoint's letters referenced that defendant was proceeding under Section 913 of the New York State Education Law.  There are no allegations that these incidents constituted "materially adverse alterations of [plaintiff's] employment conditions" and therefore they do not constitute adverse employment actions.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 113 (SDNY 2012).

claim, a causal connection can be established indirectly, "by showing that the protected activity was followed closely by discriminatory treatment", or directly, "through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). There are no factual allegations of direct retaliatory animus directed at plaintiff by Starpoint. Further, there is no temporal proximity between plaintiff's 2013 lawsuit and the Section 72 leave and medical examination which took place, almost four years later, beginning in January of 2017. *See Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 26 (2d Cir. 2011) (upholding the district court's granting of a motion to dismiss a retaliation claim because "where the complaint shows that the first alleged act of retaliation occurred eleven months after the plaintiff's protected activity, and where nothing in the plaintiff's pleadings, even liberally construed, otherwise suggests a plausible causal connection between two events occurring so far apart, the complaint fails plausibly to allege a retaliation claim.").

In contrast, plaintiff has alleged a close temporal proximity between his request for an accommodation and his placement on Section 72 leave. Indeed, plaintiff alleges that he requested an accommodation on or about January 11, 2017 and that he was not permitted back to work after January 13, 2017. Further, he alleges that Starpoint notified him of his placement on Section 72 leave and the medical examination requirement on January 23, 2017. See *Risco v. McHugh*, 868 F. Supp. 2d 75, 113-114 (SDNY 2012) ("the less than two-month temporal relationship between the protected activity and [the employee's] termination is sufficiently proximate to support an inference of causation"); *Ugactz*, 2013 U.S. Dist. LEXIS 43481, *78-79 (where plaintiff continued to make accommodation requests through October 5, 2006 and his administrative termination was

final on October 25, 2006, a reasonable jury could find that plaintiff's requests were the cause of the adverse action).  Thus, plaintiff has sufficiently alleged a causal connection his request for an accommodation in January 2017 and the Section 72 leave and medical exam instituted by Starpoint. [7]

Taking into account the plethora of documents the Court has received in conjunction with this complaint and motion to dismiss, the Court notes that Starpoint will likely be able to present evidence that it had legitimate, non-retaliatory reasons for placing plaintiff on Section 72 leave and requiring that he undergo a medical exam.  Based upon arguments raised in the motions to dismiss, Starpoint may also have evidence indicating that, contrary to the allegations in his complaint, plaintiff did not engage in protected activity under the ADA.  Although plaintiff's retaliation claims may not survive a motion for summary judgment, the Court must construe the allegations in a light most favorable to plaintiff as well as take into account the minimal standards to be met in surviving a motion to dismiss.  See *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (It is "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments they suggest."); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen plaintiff proceeds *pro se*…a court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations."); *Lehal v. Cent. Falls Det. Facility Corp.*, 13-cv-3923, 2016 U.S. Dist. LEXIS 177587 (SDNY

---

[7] It is noted that "[t]here is … an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on [an] ADA retaliation claim, that the retaliation was a 'but-for' cause of the [adverse action] or merely a motivating factor." *Eisner v. Cardozo*, 684 Fed. App'x. 29 (2d Cir. 2017). The Court finds that plaintiff has sufficiently alleged causation for purposes of a motion to dismiss under both the lower motivating factor standard and the higher showing of but-for causation.  But-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive", nor does the but-for standard "alter the plaintiff's ability to demonstrate causation … through temporal proximity."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015).

Nov. 21, 2016); *accord Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) ("To survive a motion to dismiss, "the issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence."). With these principles in mind, the Court finds that plaintiff has alleged a *prima facie* case and recommends that his retaliation claim not be dismissed at this juncture.

### Failure to Accommodate

To set forth a claim for failure to accommodate, a plaintiff must allege that: (1) he has a disability under the ADA; (2) his employer was aware of his disability; (3) he could perform the essential elements of his job with a reasonable accommodation; and (4) his employer refused to make the necessary accommodation. *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006). The ADA envisions an "interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackman v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). Standing alone, the failure to engage in the interactive process is insufficient to establish a claim under the ADA. *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 99-100 (2d. Cir. 2009). However, the failure to engage in the interactive process is relevant if it results in a failure to provide a reasonable accommodation. *Ragusa v. United Parcel Serv.*, 05 Civ. 6187, 2009 U.S. Dist. LEXIS 25152, *3 (SDNY Mar. 3, 2009). Generally, the disabled individual is responsible for informing his employer that an accommodation is needed. *Graves*, 457 F.3d at 184. However, the Second Circuit has held that an employer has a duty to accommodate an employee's disability "if the employer knew or reasonably should have known that the

employee was disabled." *Brady v. Wal-Mart Stores*, 531 F.3d 127, 135 (2d Cir. 2008). *See also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("What matters under the ADA are not formalisms about the manner of the request, but whether the employee…provides the employer with enough information that, under the circumstances, the employer can fairly be said to know of both the disability and desire for an accommodation.").

Plaintiff alleges that he is disabled in that he suffers from cerebral palsy, mitochondrial disease and a learning disability. *See Bartlett v. New York State Bd. of Law Exam'rs*, 226 F.3d 69, 74-75 (2d Cir. 2000) (finding that plaintiff's dyslexia, a learning disability, qualified as a disability as that term is defined by the ADA); *Brady v. Wal-Mart Stores*, 531 F.3d at 134 (description of plaintiff's cerebral palsy was sufficient to permit the jury to find him disabled under the ADA); 29 CFR §1630.2 (defining physical or mental impairment as "any mental or psychological disorder, such as an intellectual disability…and specific learning disabilities."). Plaintiff alleges that his learning disability affects his ability to work in that he has difficulty understanding verbal instructions and training, and that Starpoint had knowledge of plaintiff's learning disability and other conditions. Further, plaintiff alleges that on January 11, 2017, he requested an accommodation due to his inability to understand boiler training and other changes in his job requirements. He furthers alleges that when he requested the accommodation, he specifically referenced his learning disability. With respect to his ability to perform his position with or without an accommodation, plaintiff indicates that he was employed by Starpoint since 2003. He attaches performance reviews indicating that he met expectations in the performance of his job. (Dkt. No. 8, pg. 3) Further, plaintiff produced

letters from doctors in January and February of 2017 stating that he was fit for duty. Plaintiff alleges that upon asking for an accommodation, he was told that he would be provided with diagrams of internal parts. Plaintiff does not specifically state that he was not provided with the diagrams. However, in the response to the motion to dismiss, plaintiff generally states that Starpoint made no attempt to accommodate him nor did they offer him a meeting on the subject of an accommodation. In addition, plaintiff alleges that almost immediately after he made his request, he was removed from work and placed on Section 72 leave. *Hills v. Praxair, Inc.*, 11-CV-678, 2012 U.S. Dist. LEXIS 74125, *51 (WDNY May 29, 2012) (denying motion to dismiss ADA claim for failure to accommodate where employer's decision to threaten termination and provide employee less than two weeks to present new medical evidence about his ability to work, "may have affectively stopped [p]laintiff from perfecting his accommodation request.").

In sum, plaintiff alleges that he is disabled, that Starpoint knew of his disability, that he was qualified for his position, that he requested an accommodation on January 11, 2017 and that Starpoint refused to grant it. Indeed, while plaintiff alleges that Starpoint initially offered to provide diagrams he also alleges that he was not provided an accommodation and that he was removed from his position shortly after the request. As stated above, Starpoint may have evidence that an accommodation under the ADA was not requested or that plaintiff's removal from work was otherwise lawful because he was unfit for the position. However, there is a question of fact, at this point in the lawsuit, as to whether Starpoint engaged in an interactive process with plaintiff after his alleged request for an accommodation on January 11, 2017, and, if not, the reasons for that failure. *Price v. Berkshire Farm Ctr. & Servs. For Youth*, 6:12-CV-1797, 2013 U.S. Dist.

LEXIS 173764 (NDNY Dec. 9. 2013) (motion to dismiss plaintiff's ADA claim denied where "[d]efendant's alleged failure to engage in the ADA-required interactive process may have prevented [p]laintiff from identifying specific reasonable accommodations"); *Quadir v. New York State DOL*, 39 F. Supp. 3d 528 (SDNY 2014) (declining to dismiss failure to accommodate claim where, based on plaintiff's allegations, it was not clear that the employer discharged its obligations to participate in the interactive process and "[i]t would not be appropriate to resolved these highly fact specific issues on a motion to dismiss"); *Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008) (expressing no opinion as to the merits of a *pro se* plaintiff's claims in evaluating the sufficiency of the pleadings and instructing that "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Thus, the Court finds that plaintiff has adequately alleged a claim for failure to accommodate, and recommends that the claim not be dismissed.

### *Disability Discrimination*

To make out a *prima facie* claim of disability discrimination, a plaintiff must show that: (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). It is undisputed that Starpoint is subject to the ADA. As explained above, plaintiff alleges that he is a person with a disability within the meaning of ADA. Plaintiff alleges that he was otherwise qualified to perform the essential functions of his job. He indicates that he was employed by Starpoint

21

since 2003 while suffering from these disabilities, that his performance was satisfactory, and that he submitted notes from doctors in January and February 2017 stating that he was fit to return to his position as a custodian.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (internal citations and quotations omitted) ("*McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim [and] a plaintiff only needs to demonstrate that [he] possesses the basic skills necessary for performance of [the] job."); *Abbate v. Cendant Mobility Servs. Corp.*, 3-03-cv-1858, 2007 U.S. Dist. LEXIS 50623 (D. Conn. 2007) (employee's testimony that her doctor cleared her to return to work part-time as a real estate analyst without restrictions except for lifting heavy objects and that she provided her employer with a medical release was sufficient evidence that she was otherwise qualified for her position).

Plaintiff has also sufficiently alleged that he suffered an adverse employment action because of his disability.  An adverse employment action under the ADA is a "materially adverse change in the terms and conditions of employment."  *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999).  Examples of adverse employment actions include termination, demotion evidenced by a decrease in wage or salary, a loss of benefits, or diminished title or significantly diminished material responsibilities.  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  As described above, plaintiff alleges that he was forced to use his accrued paid time off and that he lost wages, benefits, retirement contributions and overtime opportunities as a result of his placement on Section 72 leave and the required medical exam. *See Horshan v. Fresh Direct*, 136 F. Supp. 3d 253 (EDNY 2015) ("Placing an employee on unpaid leave can constitute an adverse employment action."); *Lara v. City of New York*, 97 Civ. 7663, 1999

U.S. Dist. LEXIS 9740 (SDNY June 28, 1999) (placement on involuntary medical leave pursuant to Section 72 of the New York Civil Service Law considered an adverse action for purposes of employee's discrimination claim).

Finally, although it is an admittedly close call, the Court finds that plaintiff has alleged a sufficient connection between Starpoint's knowledge of his disabilities and the placement on leave.  Plaintiff alleges that he was placed on leave within two weeks of reminding Starpoint of his learning disability and his need for accommodation.  While there are allegations that plaintiff's mother contacted Starpoint to express concerns about plaintiff's ability to work and his mental health, plaintiff demonstrates that after this occurred he submitted doctor's notes on two occasions stating he was fit to return to work. Nevertheless, Starpoint kept him on leave.  Discovery in anticipation of a motion for summary judgment may well prove that Starpoint had legitimate, non-discriminatory reasons for removing plaintiff from work, requiring that he undergo a medical exam and placing him on extended administrative leave.  However, this is a fact-specific finding that cannot be made on a motion to dismiss. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (To survive a motion to dismiss, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent…[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination…[t]hey need only give plausible support to a minimal inference of discriminatory motivation.").  For these reasons, the Court finds that plaintiff has

sufficiently alleged a claim for disability discrimination under the ADA, and recommends that the claim not be dismissed. [8]

## Injunction Request

Defendant moves for an order prohibiting plaintiff from commencing any new or future actions in this Court against Starpoint and any of its agents, employees or representatives. In support of the injunction request, defendant notes that since June of 2017, plaintiff has filed twenty-six complaints with the DHR against Starpoint alleging disability discrimination and retaliation. (Dkt. No. 18-1). As of March 7, 2018, all but one of those complaints had been dismissed. (*Id.*) Plaintiff has also filed complaints with the DHR against: (1) Webster Szanyi, LLP, the law firm that represents Starpoint in this lawsuit; (2) Sargent and Collins, LLP, Starpoint's general counsel; and (3) the doctor who performed the medical exam pursuant to Section 72. (*Id.*). In addition to this lawsuit, plaintiff filed federal lawsuits against Webster Szanyi, LLP and Sargent & Collins, LLP. (*Id.*) Defendant also points to plaintiff's March of 2013 federal employment discrimination lawsuit against Starpoint, which was dismissed in February of 2015 on defendant's motion for summary judgment. (*Id.*). In light of plaintiff's extensive history of litigation, all of which has been unsuccessful to date, Starpoint asks that the Court issue an injunction using its

---

[8] The Court notes that even if the but-for standard of causation is to be applied to plaintiff's ADA retaliation claim, plaintiff may still assert, at this stage in the proceeding, claims of both retaliation and disability discrimination premised on the Section 72 medical exam and administrative leave. See *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490 (EDNY 2011) ("Where, as here, the circumstances surrounding the adverse employment action could give rise to an inference of discrimination on multiple grounds, the ultimate requirement that age be the 'but for' cause to recover on an age discrimination claim does not foreclose a plaintiff from pleading in the alternative."); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("The flexibility afforded by Rule 8(d)(2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple inconsistent claims.").

"discretionary authority to deter vexatious and abusive litigation." (*Id.*).  Starpoint argues

that absent Court intervention, plaintiff will continue to pursue frivolous litigation.  (*Id.*).

Rule 11 of the Federal Rules of Civil Procedure provides that sanctions may be

imposed on a *pro se* litigant who continues to file frivolous or baseless claims and

petitions.  *In re Mu-hammad*, 17-mc-6008, 2017 U.S. Dist. LEXIS 99363, *5-6 (WDNY

June 27, 2017).  Further, "[w]hen confronted with a vexatious and determined *pro se*

litigant…the courts have sometimes responded by completely enjoining the litigant from

the filing of designated categories of cases."  *Id.* at *8.  Issuance of a filing injunction "is

a serious matter, for access to the Courts is one of the cherished freedoms of our system

of government."  *Raffe v. Doe*, 619 F. Supp. 891, 898 (SDNY 1995) (internal quotations

and citations omitted).  The Second Circuit has held that district courts should consider

the following before imposing a filing ban: (1) the litigant's history and whether it entailed

vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the

litigation; (3) whether the litigant is represented by counsel; (4) whether the litigant has

placed an unnecessary burden on the courts or other parties; and (5) whether other,

lesser sanctions would be sufficient.  *Iwachiw v. N.Y. State Dep' of Motor Vehicles*, 396

F.3d 525, 528 (2d Cir. 2015).  Before entering a filing injunction, a district court must first

provide the litigant with notice and an opportunity to be heard.  *Moates v. Barkley*, 147

F.3d 207, 208 (2d Cir. 1998).

Plaintiff has an extensive history of filing administrative complaints and lawsuits

alleging disability discrimination and retaliation in the course of his employment with

Starpoint.  However, this matter represents only his second federal court lawsuit against

Starpoint.  Indeed, the 2013 lawsuit involved a different time period and different

allegations of wrongdoing.  While the Court has noted herein that plaintiff may have difficulty prevailing on a motion for summary judgment, his pleadings are sufficient to survive a motion to dismiss.  Thus, it cannot be stated that plaintiff is acting in bad faith or that his claims are frivolous.  It is noted that in light of the other lawsuits arising from the plaintiff's employment with Starpoint and the sheer volume of administrative complaints that have been filed, there may come a time when intervention by the Court is appropriate.  However, there is no basis to recommend that a filing injunction be imposed at this time.  *Compare Iwachiw v. New York City Bd. Of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (upholding filing ban where, in the prior six years, plaintiff filed at least thirteen *pro se* appeals, none were successful and several were "dismissed for frivolousness, failure to comply with rules or Order of [the] Court, or lack of appellate jurisdiction"); *Gertskis v. City of N.Y. Dep't of Health & Mental Hygiene*, 13-CV-2024, 2014 U.S. Dist. LEXIS 88020, *18-20 (SDNY June 27, 2014) (barring plaintiff from filing future claims related to her employment, termination and failure to be rehired after her third federal lawsuit arising out of those same issues was dismissed and she filed numerous frivolous motions and demonstrably improper appeals).

## CONCLUSION

For the foregoing reasons, it is recommended that Starpoint Central School District's motion to dismiss the complaint and motion for a filing injunction be denied.  (Dkt. Nos. 9 and 18).  Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Vilardo.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*  See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

DATED:      June 1, 2018
                  Buffalo, New York


                                                    /s/ Michael J. Roemer
                                                    HONORABLE MICHAEL J. ROEMER
                                                    United States Magistrate Judge